* * * * * * * * * * *
The Full Commission reviewed this matter based upon the record of the proceedings before the Deputy Commissioners and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good grounds to receive further evidence, rehear the parties, or amend the Opinion and Award of Deputy Commissioner Rowell, except for modifications concerning the award of attorneys' fees pursuant to N.C. Gen Stat. § 97-88.1. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and after the hearing as:
 STIPULATIONS
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On the date at issue, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between plaintiff and Pickett House.
5. Liberty Mutual Group was the compensation carrier on the risk.
6. All of plaintiff's medical records are submitted as a Stipulated Exhibit.
7. All Industrial Commission forms and filings are submitted as a Stipulated Exhibit.
8. Plaintiff's alleged date of injury is November 22, 2002.
9. Subsequent to the hearing before the Deputy Commissioner, the parties Stipulated to plaintiff's average weekly wage as $340.83, yielding a compensation rate of $227.23.
10. The parties stipulated into evidence as Stipulated Exhibit # 1, Pre-Trial Agreement.
11. The parties stipulated into evidence as Stipulated Exhibit # 2, Medical Records.
12. The parties stipulated into evidence as Stipulated Exhibit # 3, Industrial Commission forms.
13. The parties stipulated into evidence as Stipulated Exhibit # 4, Industrial Commission Rehab Nurse records (as supplemented by letter dated March 30, 2005.)
 * * * * * * * * * * * RULING ON EVIDENTIARY MATTERS
The objections contained in the Deposition of Dr. Robert J. Wilson, M.D., and Dr. Leslie R. Phillips, Ph.D., are ruled upon in accordance with the applicable rule of law and the Opinion and Award in this case.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, Jacqueline C. Jackson, was 51 years of age as of the date of hearing before the Deputy Commissioner, having a date of birth of March 29, 1953.
2. Plaintiff has a high school diploma and has qualification as a Licensed Practical Nurse (LPN). Prior to the admittedly compensable injury in this case, plaintiff had worked as an LPN for 26 years.
3. Plaintiff was performing LPN job duties at Pickett House Family Care Home on November 22, 2002. This facility is a group home. On that date, a heavy fire extinguisher fell on her right foot, fracturing a toe and resulting in other injuries.
4. Defendants admitted the compensability of and their liability for the injury by accident pursuant to a Form 60 dated December 19, 2002. According to this Form 60, plaintiff's average weekly wage was $380.01, and she was paid weekly benefits at the compensation rate of $253.35; these amounts were later changed to an average weekly wage of $340.83 and a compensation rate of $227.23, pursuant to stipulation of the parties.
5. Following the injury, plaintiff was first seen at Durham Regional Hospital, and was provided crutches and a hard-soled shoe. Plaintiff then came under the care of physicians at Triangle Orthopaedic Associates. Plaintiff was first treated by Dr. Michele Pescasio, an orthopedic specialist. Dr. Pescasio treated plaintiff from December 2002 through approximately March 2003. Dr. Pescasio treated plaintiff for symptoms of Complex Regional Pain Syndrome (CRPS), also known as Reflex Sympathetic Dystrophy (RSD), although a bone scan done on January 13, 2003, did not show findings consistent with RSD/CRPS.
6. Plaintiff underwent a course of physical therapy and also used a TENS unit, but she continued to have problems. Plaintiff was seen on February 20, 2003, for a second opinion by Dr. Paul Wright at Durham Orthopedic Clinic. Dr. Wright felt that it was conceivable that plaintiff had a central nervous system lesion in the thoracolumbar spine because it was unusual for RSD/CRPS to show no improvement after three months of treatment. Dr. Wright recommended pain management.
7. Dr. Pescasio referred plaintiff to rehabilitation medicine and the pain clinic. Plaintiff then came under the care and treatment of Dr. John Guisto, a physiatrist at Triangle Orthopaedic. Plaintiff treated with Dr. Guisto from approximately April 2003 through August 2003. Dr. Guisto ordered lumbar sympathetic nerve blocks, which Dr. Robert Wilson performed on April 14, 2003. Dr. Guisto also prescribed an RS-4i sequential stimulator, as well as treatment with Dr. Leslie Phillips, a pain psychologist, for pain management.
8. Plaintiff filed a medical motion with the North Carolina Industrial Commission, which resulted in an order filed by Special Deputy Commissioner Lacy Maddox on August 24, 2003. In this order, psychologist Leslie Phillips, Ph.D., was named an authorized treating physician. In addition, defendant-carrier was ordered to provide all necessary diagnostic testing, muscle stimulator, or other rehabilitative devices as recommended by a treating physician. Pursuant to this order, plaintiff came under the care of Dr. Phillips. No attorneys' fees, sanctions, or costs were assessed by the Special Deputy Commissioner in this order.
9. After Dr. Guisto left the practice of Triangle Orthopaedics, plaintiff's care was transferred to Dr. Hong Kai K. Du. Another series of sympathetic blocks was ordered; some blocks were of benefit, while plaintiff did not report benefit from some of the blocks. Dr. Du recommended a spinal cord stimulator and noted that plaintiff was highly motivated to return to work if her pain could be controlled. When Dr. Du left the practice, plaintiff's care was transferred to Dr. Wilson. Plaintiff remains under the care of Dr. Phillips and Dr. Wilson.
10. Plaintiff, through counsel, filed a second motion to compel medical treatment with the Industrial Commission on or about March 15, 2004. This motion was to compel defendant-carrier to provide the spinal cord stimulator. However, this very treatment had been authorized by defendants on March 10, 2004, five days prior to the filing of plaintiff's motion. By order filed by Special Deputy Commissioner Robert Harris on April 12, 2004, plaintiff's motion to compel medical treatment was determined to be moot, due to the authorization that had occurred prior to the filing of the motion. Plaintiff's motion for sanctions and/or attorneys' fees was denied by the Special Deputy Commissioner.
11. On May 18, 2004, plaintiff underwent a trial of the spinal cord stimulator. Plaintiff had excellent results with the trial of the spinal cord stimulator. Accordingly, the spinal cord stimulator was permanently implanted on August 13, 2004. By the date of her appointment with Dr. Wilson on September 8, 2004, and again on October 6, 2004, plaintiff reported that the spinal cord stimulator was working well, and that she had good pain relief from it.
12. On October 6, 2004, Dr. Wilson discussed with plaintiff that he wanted to try to taper her medications, given the positive results she had had from the stimulator. In addition, at the time of that evaluation, Dr. Wilson discussed options with plaintiff for future vocational rehabilitation. The issue was again discussed with plaintiff at her appointment with Dr. Wilson on December 1, 2004.
13. While plaintiff's pain has been relatively well-managed due to the implantation of the stimulator, with fair to good results and with significant pain reduction as compared with her condition prior to the implantation of the stimulator, the subsequent tapering of her medications caused a flare-up of plaintiff's pain, and the medications had to be restarted.
14. Plaintiff has received a great deal of treatment for her injury, including physical therapy, pool therapy, injections, cognitive/behavioral therapy, as well as medications, including narcotics.
15. According to plaintiff's treating medical physician, Dr. Wilson, plaintiff attained maximum medical improvement on January 26, 2005.
16. Dr. Phillips, a pain psychologist, diagnosed plaintiff with adjustment disorder and depression and recommended that plaintiff undergo a course of cognitive behavioral therapy in order to develop pain-coping skills. As of the date of his December 8, 2004, deposition testimony in this matter, Dr. Phillips had last seen plaintiff on April 28, 2004.
17. While Dr. Phillips testified that plaintiff was at maximum medical improvement from a psychological standpoint as of April 28, 2004, the last date on which he had seen her, he admitted that he was hamstrung in testifying on this subject in that it had been a number of months since he had last seen plaintiff. Moreover, because plaintiff's psychological condition is largely if not entirely caused by her level of pain, Dr. Phillips was even more at a disadvantage in testifying about plaintiff's current psychological status in that he had not seen plaintiff since well before the spinal cord stimulator was implanted, and the spinal cord stimulator has offered plaintiff some relief from her pain.
18. The Full Commission finds as fact that plaintiff was not at maximum medical improvement from a medical standpoint as of the date of the July 23, 2004, hearing before Deputy Commissioner Gregory. In fact, she was weeks shy of the implantation of the spinal cord stimulator and would not reach maximum medical improvement for at least six full months after the date of hearing. It follows that plaintiff's request for a determination of permanent total disability as of the date of the hearing before the Deputy Commissioner was premature.
19. Plaintiff's treating medical physician, Dr. Wilson, testified that he encouraged plaintiff to seek opportunities to return to work in some capacity and to participate in a vocational assessment. While Dr. Wilson felt that, at the time he last saw her, plaintiff was permanently totally disabled from returning to work eight hours a day, 40 hours a week, he also felt that there might be vocational options available to plaintiff such as part-time work, a home-based job, or computer/internet work that plaintiff was capable of performing.
20. Plaintiff's treating psychologist, Dr. Phillips, testified that plaintiff had the potential from a psychological perspective of being able to return to work in some capacity, that returning to work can certainly improve a workers' compensation claimant's mental outlook, and that if plaintiff were able to return to work, her mental outlook would improve.
21. Despite the speculation by Dr. Wilson and Dr. Phillips concerning the possible future employability of plaintiff, the greater weight of the medical and psychological evidence establishes, and the Full Commission finds as fact, that plaintiff retains no competitive wage earning capacity and her condition is likely permanent.
22. Defendants no longer contest the fact that plaintiff is entitled to a finding of permanent and total disability after she reached maximum medical improvement.
23. The Full Commission finds that defendants' defense of this matter does not justify the imposition of attorneys' fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the forgoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On November 22, 2002, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the medical and psychological evidence establishes that plaintiff retains no competitive wage earning capacity and that her condition is likely permanent. N.C. Gen. Stat. § 97-29.
3. As a result of the injury of November 22, 2002, plaintiff has been totally disabled from December 10, 2002, through the date of hearing before the Deputy Commissioner and continuing. As a result of plaintiff's compensable injury by accident and resulting disability, she is entitled to receive ongoing permanent and total disability compensation in the amount of $227.23 per week and continuing until further order of the Commission, subject to an award of attorneys' fees. N.C. Gen. Stat. § 97-29.
4. The medical treatment plaintiff has received to date has been reasonable and necessary to effect a cure, give relief, or lessen the period of plaintiff's disability. Defendants are liable for the expenses plaintiff incurred for this treatment to date and which will be incurred in the future. N.C. Gen. Stat. §97-25.
5. Dr. Robert J. Wilson and Dr. Leslie R. Phillips are designated as authorized treating physicians and shall continue to provide treatment to plaintiff regarding her future medical and psychological care. N.C. Gen. Stat. § 97-25.
6. An attorneys' fee in the amount of twenty-five percent (25%) of the plaintiff's compensation benefits is reasonable in this claim. N.C. Gen. Stat. § 97-90.
7. Defendants' defense of this claim was not unreasonable. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorneys' fee herein awarded, defendants shall pay to plaintiff ongoing permanent and total disability compensation in the amount of $227.23 per week and continuing until further order of the Commission.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury, for so long as such treatment tends to effect a cure, give relief, or lessen the period of plaintiff's disability. This includes payment for treatment provided by Dr. Wilson and Dr. Phillips. Drs. Wilson and Phillips are approved as plaintiff's treating physicians and defendants are to timely provide the care they prescribe for plaintiff and timely make payment of all bills, prescriptions, and referrals which may be necessary in the future.
3. Defendants shall pay to plaintiff's attorney 25% of all compensation due to plaintiff, by paying directly to plaintiff's attorney every fourth check.
4. Defendants shall pay the costs of this proceeding.
This 27th day of July 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ DIANNE C. SELLERS COMMISSIONER